Jeffrey S. Ratliff
**RANSOM, GILBERTSON,**
**MARTIN & RATLIFF, LLP**
8401 NE Halsey Street Suite 208
Portland, OR 97220
T: 503-226-3664
F: 503-243-6716
rgmr1500@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| KEVIN HESSEL, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>v.<br><br>PORTLAND GENERAL ELECTRIC COMPANY, MARIA POPE, and JAMES F. LOBDELL,<br><br>              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kevin Hessel ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Portland General Electric Company ("PGE" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by PGE; and (c) review of other publicly available information concerning PGE.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired PGE securities between April 24, 2020 and August 24, 2020, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      PGE is an electric utility that engages in the generation, transmission, distribution, and retail sale of electricity in the state of Oregon. The Company also participates in wholesale markets by purchasing and selling electricity and natural gas to meet the needs of its retail customers.

3.      On August 24, 2020, after the market closed, PGE announced that it had incurred losses of $127 million as of August 24, 2020. PGE further stated that "PGE personnel entered into a number of energy trades during 2020, with increasing volume accumulating late in the second quarter and into the third quarter, resulting in significant exposure to the Company." In addition, PGE announced that it had formed a Special Committee "to review the energy trading that led to the losses and the Company's procedures and controls related to the trading."

4.      On this news, the Company's share price fell $3.51, or nearly 8%, to close at $38.45 per share on August 24, 2020, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that PGE lacked effective internal controls over its energy trading practices; (2) that PGE personnel had entered energy trades during 2020, with increasing volume accumulating late in the second quarter and into the third quarter, that created significant negative financial exposure for PGE; (3) that, as a result, the Company was reasonably likely to incur significant losses; and (4) that, as a result of

2 – CIVIL CLASS ACTION COMPLAINT

the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff Kevin Hessel, as set forth in the accompanying certification, incorporated by reference herein, purchased PGE securities during the Class Period, and suffered damages as a

3 – CIVIL CLASS ACTION COMPLAINT

result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant PGE is incorporated under the laws of Oregon with its principal executive offices located in Portland, Oregon. PGE's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "POR."

13.     Defendant Maria Pope ("Pope") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant James F. Lobdell ("Lobdell") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Pope and Lobdell (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     PGE is an electric utility that engages in the generation, transmission, distribution, and retail sale of electricity in the state of Oregon. The Company also participates in wholesale

markets by purchasing and selling electricity and natural gas to meet the needs of its retail customers.

## Materially False and Misleading
## Statements Issued During the Class Period

17.    The Class Period begins on April 24, 2020. On that day, PGE announced its first quarter 2020 financial results in a press release that stated, in relevant part:

"Our financial performance this quarter largely reflects conditions experienced prior to the COVID-19 pandemic," said Maria Pope, PGE president and CEO. "PGE is committed to serving the needs of our customers and our community during this time. Given the deteriorating economic outlook, the company is revising full-year earnings guidance to $2.20 to $2.50 per diluted share. This guidance includes a decrease in annual retail deliveries of 1 to 2%, weather adjusted, and reflects management actions to reduce operating and maintenance and capital spending. Our forecasts of long-term earnings growth remain at 4 to 6%."

*        *        *

Revised guidance assumes:

- A decrease in annual retail deliveries of 1% to 2%, weather adjusted, with decreases concentrated in the commercial sector, partially offset by increased residential load, and flat industrial loads;

- Average hydro conditions for the year;

- Wind generation based on five years of historical levels or forecast studies when historical data is not available;

- Normal thermal plant operations;

- Operating and maintenance costs between $570 million and $590 million, versus our previous forecast of $590 million to $610 million, which includes an increase in our full-year forecasted bad debt expense from $6 million to $15 million due to moratoriums on collection activities and customer disconnects; and

- Revised depreciation and amortization expense from between $415 million and $435 million to between $410 million and $430 million.

18.    On July 31, 2020, PGE announced its second quarter 2020 financial results in a press release that stated, in relevant part:

Portland General Electric Company (NYSE: POR) today reported net income of $39 million, or 43 cents per diluted share, for the second quarter of 2020. This compares with net income of $25 million, or 28 cents per diluted share, for the second quarter of 2019.

"We achieved solid second quarter financial results, driven by a combination of favorable hydro and wind conditions and lower operating expenses," said Maria Pope, PGE president and CEO. "As an essential service provider, we will continue working to keep costs low to support economic recovery and the communities we serve in this unprecedented time."

## Second quarter 2020 earnings compared to second quarter 2019 earnings

Total revenues increased as a result of higher residential, industrial and wholesale demand, which was partially offset by lower commercial demand. Power costs increased due to higher overall system deliveries, which more than offset a decline in the average cost per MWh due to lower gas prices and surplus hydro in the region. Operating expense declined due to continuous efforts to reduce the company's overall cost structure as well as lower plant maintenance expense. Tax expense was favorable due to higher Production Tax Credit generation at PGE's wind facilities.

*       *       *

## 2020 Earnings Guidance

PGE is reaffirming its 2020 earnings guidance of $2.20 to $2.50 per diluted share. This guidance is based on the following assumptions:

- Revised annual retail deliveries from a decrease of 1% to 2%, weather adjusted, to flat energy deliveries, weather adjusted, year over year. This upward revision reflects stronger residential and industrial demand offset by a decline in commercial deliveries;

- Net variable power costs for the year ending December 31, 2020 to be below the power cost adjustment mechanism baseline, but within the established deadband range;

- Average hydro conditions for the year;

- Wind generation based on five years of historical levels or forecast studies when historical data is not available;

- Normal thermal plant operations;

- Operating and maintenance expense between $570 million and $590 million, which includes a full-year forecasted bad debt expense of $15

million due to moratoriums on collection activities and customer disconnects; and

- Depreciation and amortization expense between $410 million and $430 million.

19.    The above statements identified in ¶¶ 17-18 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that PGE lacked effective internal controls over its energy trading practices; (2) that PGE personnel had entered energy trades during 2020, with increasing volume accumulating late in the second quarter and into the third quarter, that created significant negative financial exposure for PGE; (3) that, as a result, the Company was reasonably likely to incur significant losses; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

20.    On August 24, 2020, after the market closed, PGE announced that it had incurred losses of $127 million as of August 24, 2020 due to certain "energy trades during 2020, with increasing volume accumulating late in the second quarter and into the third quarter, resulting in significant exposure to the Company." In addition, PGE announced that it had formed a Special Committee "to review the energy trading that led to the losses and the Company's procedures and controls related to the trading." Specifically, the Company issued a press release that stated, in relevant part:

> PGE personnel entered into a number of energy trades during 2020, with increasing volume accumulating late in the second quarter and into the third quarter, resulting in significant exposure to the Company.
>
> In August 2020, this portion of PGE's energy portfolio experienced significant losses as wholesale electricity prices increased substantially at various market hubs due to extreme weather conditions, constraints to regional transmission facilities,

and changes in power supply in the West. During this time period, the California Independent System Operator (CAISO) declared a Stage 3 Electrical Emergency and ordered the first rolling blackouts in the state of California since 2001.

As a result of the convergence of these conditions, the Company's energy portfolio, as of August 24, 2020, has experienced realized losses of $104 million and unrealized, mark-to-market losses of $23 million. Total third quarter losses in the portfolio are estimated to be up to $155 million subject to market conditions – although the ultimate amount of losses could exceed that amount.

The increase in net variable power costs due to this trading activity will be recognized in PGE's results of operations. There will be no impact to customer prices, as the Company will not pursue regulatory recovery. The Company noted that the loss does not impact PGE's ability to serve customers.

Promptly upon learning of the issue, the PGE Board of Directors formed a Special Committee comprising five independent Board members (John Ballantine, Jack Davis (Chair), Kathryn Jackson, Neil Nelson and Charles Shivery) to review the energy trading that led to the losses and the Company's procedures and controls related to the trading, and to make recommendations to the Board for appropriate action. The Special Committee has retained Simpson Thacher & Bartlett LLP as its independent legal advisor, which expects to engage additional advisors on behalf of the Special Committee during the course of this review.

21.     In the same press release, PGE lowered its guidance for fiscal 2020, stating:

PGE is revising its full-year 2020 guidance from $2.20 to $2.50 per diluted share to $1.30 to $1.60 per diluted share due to the impacts of higher net variable power costs. This guidance is based on the following assumptions:

- Higher third quarter net variable power costs of up to $155 million;

- Annual retail deliveries flat, weather adjusted, year over year;

- Average hydro conditions for the year;

- Wind generation based on five years of historical levels or forecast studies when historical data is not available;

- Normal thermal plant operations;

- Operating and maintenance expense between $550 million and $570 million, which includes a full-year forecasted bad debt expense of $15 million due to moratoriums on collection activities and customer disconnects; and

- Depreciation and amortization expense between $410 million and $430 million.

The Company believes the impact of this event is isolated to 2020, and reaffirms 4% to 6% long-term diluted earnings per share growth based on previous guidance. The Company does not expect any change to its dividend guidance.

22.     On this news, the Company's share price fell $3.51, or nearly 8%, to close at $38.45 per share on August 24, 2020, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired PGE securities between April 24, 2020 and August 24, 2020, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

24.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, PGE's common shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of PGE common stock were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by PGE or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

25.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

27.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of PGE; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

29.    The market for PGE's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, PGE's securities traded at artificially inflated prices during the Class Period. Plaintiff

and other members of the Class purchased or otherwise acquired PGE's securities relying upon the integrity of the market price of the Company's securities and market information relating to PGE, and have been damaged thereby.

30.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of PGE's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about PGE's business, operations, and prospects as alleged herein.

31.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about PGE's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

32.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

33.    During the Class Period, Plaintiff and the Class purchased PGE's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

34.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding PGE, their control over, and/or receipt and/or modification of PGE's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning PGE, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

35.    The market for PGE's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, PGE's securities traded at artificially inflated prices during the Class Period. On June 8, 2020, the Company's share price closed at a Class Period high of $48.28 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying

upon the integrity of the market price of PGE's securities and market information relating to PGE, and have been damaged thereby.

36.     During the Class Period, the artificial inflation of PGE's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about PGE's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of PGE and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

37.     At all relevant times, the market for PGE's securities was an efficient market for the following reasons, among others:

(a)     PGE shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, PGE filed periodic public reports with the SEC and/or the NYSE;

(c)     PGE regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

Case 3:20-cv-01523-SI   Document 1   Filed 09/03/20   Page 14 of 22

(d)     PGE was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

38.     As a result of the foregoing, the market for PGE's securities promptly digested current information regarding PGE from all publicly available sources and reflected such information in PGE's share price. Under these circumstances, all purchasers of PGE's securities during the Class Period suffered similar injury through their purchase of PGE's securities at artificially inflated prices and a presumption of reliance applies.

39.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be

14 – CIVIL CLASS ACTION COMPLAINT

characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of PGE who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

41.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase PGE's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

43.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

15 – CIVIL CLASS ACTION COMPLAINT

maintain artificially high market prices for PGE's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about PGE's financial well-being and prospects, as specified herein.

45.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of PGE's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about PGE and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

46.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the

other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

47.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing PGE's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

48.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of PGE's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants

during the Class Period, Plaintiff and the other members of the Class acquired PGE's securities during the Class Period at artificially high prices and were damaged thereby.

49.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that PGE was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their PGE securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM

#### Violation of Section 20(a) of The Exchange Act
#### Against the Individual Defendants

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

53.     Individual Defendants acted as controlling persons of PGE within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence

and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.     As set forth above, PGE and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 3, 2020                    By: _____

Jeffrey S. Ratliff
**RANSOM, GILBERTSON, MARTIN & RATLIFF, LLP**
8401 NE Halsey Street Suite 208
Portland, OR 97220
T: 503-226-3664
F: 503-243-6716
rgmr1500@gmail.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Kevin Hessel*

## SWORN CERTIFICATION OF PLAINTIFF

## PORTLAND GENERAL ELECTRIC COMPANY SECURITIES LITIGATION

I, Kevin Hessel, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Portland General Electric Company securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Portland General Electric Company securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/31/2020

Date

DocuSigned by:

Kevin Hessel

7EA3E95B304B45D...

Kevin Hessel

**Kevin Hessel's Transactions in Portland General Electric Company (POR)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 7/29/2020 | Bought | 40 | $43.8000 |
| 7/30/2020 | Bought | 25 | $43.9357 |
| 7/31/2020 | Bought | 25 | $43.9521 |